THE SOCIETY FOR ESTABLISHING USEFUL MANUFAC-TURES, PROSECUTOR, v. BOARD OF CONSERVATION AND DEVELOPMENT, NORTH JERSEY DISTRICT WATER SUPPLY COMPANY ET AL., RESPONDENTS.

Argued June 6, 1917—Decided September 14, 1917.

Upon an application by the District Board of Water-Supply Commissioners, under the act of 1916, page 129, to the Board of Conservation and Development, created by the act of 1915, page 426, for its approval and consent to the diversion of water for an additional water-supply to the cities of Newark and Paterson, the Board of Conservation and Development has power to attach reasonable terms and conditions to its approval and consent, which are germane to the subject-matter. For such terms and conditions, in this case, see this opinion.

On *certiorari.*

Before Justices SWAYZE, BERGEN and BLACK.

For the prosecutor, *Humphreys & Sumner* and *Gilbert Collins.*

For the state, *John W. Wescott,* attorney-general.

For the city of Newark, *Harry Kalisch.*

For the city of Paterson, *Francis Scott.*

For North Jersey District Water-Supply Commission, *Spaulding Frazer.*

The opinion of the court was delivered by

BLACK, J.   Approval of the application of the North Jersey District Water-Supply Commission and a consent to the diversion of water from the Wanaque river, as proposed therein, for an additional water-supply for the cities of Newark and Paterson, was given by the Board of Conservation and Development on the 19th day of December, 1916. This approval was made under a petition filed by the North Jersey District Water-Supply Commission on the 9th day of October, 1916.

The Board of Conservation and Development was created by an act of the legislature approved April 8th, 1915. *Pamph. L., p.* 426. The *certiorari* was issued in this case to test the legality of such approval and consent.

The approval and consent was given subject to the following terms and conditions:

1. The North Jersey District Water-Supply Commission shall pay or cause to be paid to the state on behalf of each of the municipalities supplied with water under this approval such annual charge as is now made or may be hereafter authorized by law.

2. This approval shall not become operative unless said commission shall have filed with this board within ninety days from date hereof its written agreement accepting the terms and conditions hereby imposed.

3. The North Jersey District Water-Supply Commission shall in good faith begin the construction of the storage reservoir mentioned in its application within one year from the date of this approval and shall complete the same within five years.

4. The maximum diversion from the Wanaque river authorized by this approval is an average of fifty million gallons *per diem* for any period of thirty consecutive days.

5. The dry-season flow of the Wanaque river below the dam must at all times be maintained at a minimum of twelve million gallons *per diem*.

6. This approval is given subject to the vested rights of all persons, corporations, or municipalities affected by the proposed plan.

7. In the event that any of the conditions herein imposed are violated and such violation shall be established to the satisfaction of this board, this assent shall thereby be abrogated.

The prosecutor has valuable water rights in the Passaic river, of which the Wanaque river is a tributary.

The ground of attack is, that under section 6 of the act of 1916, page 131, the jurisdiction of the Board of Conservation and Development is confined to giving or withholding its consent to the proposed diversion and to nothing else; in other words, the terms and conditions, as set forth above, on which the approval and consent were given, renders it illegal. A correct solution of this question involves, of course, a critical examination of the statutes under which these two boards were created; a short summary or history of such legislation is as follows:

A state water-supply commission was created by an act of the legislature approved June 17th, 1907 (*Pamph. L., p.* 633) ; among other things, it provides for the approval of plans for municipal corporations obtaining new or an additional source of water-supply. It may by that act "either approve such application, reject it entirely, or approve the same subject to such reasonable terms and conditions as the commission may prescribe." Section 3, this act, was referred to in *Mundy* v. *Fountain,* 76 *N. J. L.* 701; by the act approved April 8th, 1915 (*Pamph. L., p.* 436), the Board of Conservation and Development, the defendant in this suit, was created as the successor to the state water-supply commission, repealing all acts inconsistent therewith (section 16) ; but "shall succeed to and exercise all the rights and powers and perform all the duties now exercised and performed or conferred and charged upon the state water-supply commission" (section 5) ; "The Board of Conservation and Development shall have full control and direction of all state conservation and development projects and of all work in any way relating thereto, except such work as is conferred upon other boards not included within the provisions of this act" (section 7) ; by the act approved March 16th, 1916 (*Pamph. L., p.* 128), the state was divided into two water-supply districts, to be known

respectively as the North Jersey Water-Supply District and the South Jersey Water-Supply District; the act approved March 16th, 1916 (*Pamph. L., p.* 129), provides for the appointment of district boards as provided and authorized by the previous act, and defining their powers. It was under this act that the commissioners of the North Jersey Water-Supply District petitioned for the consent which is the disputed point in this litigation; section 6, which provides "upon the filing of such petition the said district water-supply commission, after obtaining the consent of the state water-supply commission, or its successor, to the diversion of waters for such water-supply," shall proceed to formulate plans, &c. The argument is, this section provides for a bare consent and nothing more. But this ignores the legislation and the power granted in that legislation to the Board of Conservation and Development above cited. We think it is too plain for argument that under this legislation the Board of Conservation and Development had not only implied but express power to attach to its approval and consent the terms and conditions above set forth, as shown in the record. In addition to what seems to us to be the clear expressed intention of the legislature, these terms and conditions are all strictly germane to the subject-matter that was then before the board for action; they are necessary incidents to make effective, if not efficient, the approval and consent of the board. The construction contended for by the prosecutor is too narrow and artificial; it would strip such approval and consent of its vitality, and, as we think, in direct opposition to the expressed intention of the legislature, viz., that the Board of Conservation and Development had the power to impose those terms as conditions precedent to its approval and consent. The only other question is whether such terms and conditions imposed were reasonable. We think there is nothing unreasonable in any of them. There is nothing else mooted in the record which calls for discussion.

The *certiorari* in this case is dismissed, with costs.